UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**OPHELIA WALKER,**

      **Plaintiff,**

v.                                Case No: 6:20-cv-1149-ACC-EJK

**KIRKMAN MANAGEMENT, LLC
and HELEN KWOK,**

      **Defendants.**

### REPORT AND RECOMMENDATION

This cause comes before the Court on the parties' Second Amended Joint Motion for Approval of FLSA Settlement Agreement (the "Motion"), filed on March 11, 2022. (Doc. 74.) Upon consideration, I respectfully recommend that the Motion be granted.

### I.  BACKGROUND

Plaintiff Ophelia Walker initiated this action against Defendants Helen Kwok ("Kwok") and Kirkman Management, LLC, [1] ("Kirkman") (collectively, "Defendants"), on June 29, 2020, alleging violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and Article X, Section 24, of the Florida Constitution. (Doc. 1.) Plaintiff thereafter filed an Amended Complaint, alleging that she was employed as a housekeeping supervisor and laundry attendant for Defendants

---

[1] Defendants Helen James and Allamanda Investment, LLC, were initially joined in the action but were ultimately dismissed from the case.

from around October 2018 through August 2019, and that she was not paid minimum wage for all hours worked. (Doc. 34 ¶ 17.) Plaintiff also alleged that she worked in excess of 40 hours per week during one or more workweeks and was not paid overtime. (Doc. 34 ¶ 18.) Defendants dispute these allegations. (Doc. 74 at 5.) However, Plaintiff and Defendants have negotiated a compromise and settlement of Plaintiff's claims and filed a motion for approval of their settlement agreement (the "Agreement"), pursuant to *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354–55 (11th Cir. 1982). (Doc. 74-1.) On January 20, 2022, the Court directed counsel to inform the Court "whether or not the parties have entered into any agreement . . . . that has not been disclosed to the Court." (Doc. 65.) The parties stated that they have not. (Doc. 66.) The parties then moved for approval of the Agreement twice, but the motions were denied due to deficiencies with the settlement agreement. (Docs. 64, 67, 68, 71.) The parties thereafter filed this second amended Motion in accordance with the Court's Order. (Doc. 74.)

## II.    LEGAL STANDARD

"The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (alteration in original) (quoting 29 U.S.C. § 202(a)). "Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee

or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Section 206 establishes the federally mandated minimum hourly wage, and § 207 prescribes overtime compensation of "one and one-half times the regular rate" for each hour worked in excess of forty hours during a given workweek. The provisions of the FLSA are mandatory and "cannot be abridged by contract or otherwise waived." *Barrentine*, 450 U.S. at 740. To permit otherwise would "'nullify the purposes' of the [FLSA] and thwart the legislative policies it was designed to effectuate." *Id.* (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945)).

The parties seek judicial review and a determination that their settlement is a "fair and reasonable resolution of a bona fide dispute" over FLSA issues. *See Lynn's Food Stores*, 679 F.2d at 1354–55. If a settlement is not supervised by the Department of Labor, the only other route for a compromise of FLSA claims is provided in the context of suits brought directly by employees against their employers under § 216(b) to recover back wages for FLSA violations. *Id.* at 1353. "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Id.*

The Eleventh Circuit has held that "[s]ettlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because

initiation of the action by the employees provides some assurance of an adversarial context." *Id.* at 1354. In adversarial cases:

> The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.*

When evaluating an FLSA settlement agreement, the district court considers both whether the settlement is fair and reasonable to the employee, or "internal" factors, and whether the settlement frustrates the purpose of the FLSA, or "external" factors. *Dees v. Hyrdradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010); *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1350–51 (M.D. Fla. 2010). Factors considered "internal" include: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel." *Hamilton v. Frito-Lay, Inc.*, No. 6:05-cv-592-ORL-22JGG, 2007 WL 328792,

at *2 (M.D. Fla. Jan. 8, 2007). There is a "'strong presumption' in favor of finding a settlement fair." *Id.* (quoting *Cotton v. Hinton*, 559 F.2d 1336, 1331 (5th Cir. 1977)).[2]

## III. DISCUSSION

### A. The Settlement Amount[3]

According to the Agreement, Defendants have agreed to pay Plaintiff $3,500.00: $1,750.00 for her unpaid wage claims and $1,750.00 in liquidated damages. (Doc. 74-1 at 1.) Plaintiff initially sought a total of $8,384.53 in wage compensation. (Doc. 74 at 5.) Because Plaintiff will receive less than the amount to which she claimed she was entitled under the FLSA, she has compromised her claim within the meaning of *Lynn's Food,* 679 F.2d at 1354–55.

---

[2] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding all decisions from the Fifth Circuit handed down prior to October 1, 1981, are binding on the Eleventh Circuit).

[3] The undersigned notes that the Agreement contains what appears to be a scrivener's error. The Motion notes that the total settlement sum is $6,750.00 (including attorney's fees and the mutual release consideration). (Doc. 74 at 6.) However, the Agreement says the total sum is "FIVE THOUSAND AND 00/100 DOLLARS (USD) ($6,750.00)." (Doc. 74-1 at 1.) Despite this, it is clear that the total sum is $6,750.00, as the Agreement contains a breakdown of the settlement sum, which totals $6,750.00. Thus, I recommend the Court find that this error does not affect or undermine the fairness of the parties' settlement, and accordingly, does not preclude the Court from approving the parties' settlement. *See, e.g.*, *Dortants v. Ripley Entm't, Inc.*, No. 6:13-cv-243-Orl-19KRS, 2013 WL 12388586, at *2 (M.D. Fla. Aug. 1, 2013), *report and recommendation adopted*, 2013 WL 12388587 (M.D. Fla. Aug. 13, 2013) (approving FLSA settlement agreement even though it contained scrivener's error incorrectly identifying the judges assigned to the case); *Langellier v. Brevard Extraditions Inc.*, No. 6:19-cv-1316-Orl-37EJK, 2021 WL 1221078, at *2 n.2 (M.D. Fla. Mar. 30, 2021), *report and recommendation adopted*, No. 6:19-cv-1316-Orl-37EJK, 2021 WL 1222767 (M.D. Fla. Apr. 1, 2021) (approving FLSA settlement even though it contained a scrivener's error as to the amount of liquidated damages).

Under 29 U.S.C. § 216(b), an employee damaged by an FLSA violation is entitled to unpaid overtime compensation plus an additional, equal amount, as liquidated damages. 29 U.S.C. § 216(b) ("Any employer who violates the provisions of [the FLSA] shall be liable to the employee . . . affected in the amount of their unpaid . . . unpaid overtime compensation . . . and in an additional equal amount as liquidated damages."). On review, I find the $3,500.00 that Plaintiff has agreed to accept in satisfaction of her claims to be fair and reasonable in comparison to the original claim, considering that all parties are represented by counsel and wish to avoid the risk and expense of further litigation. Thus, I find that the settlement sum represents a fair resolution of a bona fide dispute between the parties and that Plaintiff has not unfairly compromised her claim.

Both parties are represented by counsel and agree the negotiated terms of the settlement represent a fair, reasonable, and just compromise of the disputed issues, in light of the parties' antagonistic employment relationship and the desire to avoid the uncertainty and expense of further litigation, detailed at length in the Motion.

Thus, I recommend a finding that the settlement sum represents a fair resolution of a *bona fide* dispute between the parties and that Plaintiff has not unfairly compromised her claim.

### B. Attorney's Fees

Plaintiff's attorney will receive a total of $3,000.00 for attorney's fees and costs. (Doc. 74-1 at 1.) Pursuant to 29 U.S.C. § 216(b), "[t]he court [in an FLSA action] shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the

action." The parties represent that this amount was negotiated separately from the amount received by Plaintiff, and the settlement is otherwise reasonable on its face; therefore, further review is not required. (Doc. 74 at 6–7); *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009) (stating that if the parties "represent[] that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff . . . the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.").

### C. General Release

In return for payment, Plaintiff has agreed to the following mutual release:

Based on the consideration described above, which Walker agrees is sufficient consideration, Walker hereby fully and finally releases and discharges Kirkman from any and all claims, demands, rights, damages, costs, losses, suits, actions, causes of action, attorneys' fees, expenses, salary, stock options, commissions, bonuses, wages, overtime or any sums of any nature whatsoever, in law or in equity, known or unknown, arising from or by reason of any matter, act omission, cause or thing whatsoever, whether known or unknown, foreseen or unforeseen, through the date of this Agreement, including without limitation: any and all claims or on behalf of Walker that Kirkman has ever committed any statutory violation or other wrong with respect to Walker insofar as such claims have or could have been asserted by Walker; any and all claims of other liability or damage of any nature whatsoever which have arisen or might have arisen from any alleged acts, omissions, events, circumstances or conditions related to Walker's purported employment with and/or separation from Kirkman including, but not limited to, claims for breach of contract, commissions, overtime pay and/or any fact or occurrence up through the date of this agreement, including any alleged acts of harassment, discrimination or retaliation by Kirkman; age discrimination, workers' compensation retaliation, intentional infliction of emotional distress, constructive discharge, wage and hour, assault and battery and any other tort (including, but not limited to, any and all claims of negligent hiring, retention and/or supervision, intentional or negligent invasion of privacy, defamation, compelled defamation, intentional or negligent infliction of emotional harm, libel, slander,

invasion of privacy or violations of public policy), any and all legal restrictions on Kirkman's right to terminate employees, or any federal, state or other governmental statute, regulation or ordinance, including any and all claims for monetary recovery, including past or future lost wages, mental anguish, pain and suffering, any liquidated, compensatory or punitive damages and attorneys' fees, expenses and interest; and any and all claims whatsoever asserted by Walker against Kirkman and for or on account of any matter or thing whatsoever occurring up to and including the date of execution of this Agreement. The statutory claims released by this Agreement include, but are not limited to, claims brought under:

Title VII of the Civil Rights Act of 1964, as amended in 1991;
The Employee Income Retirement Security Act ("ERISA");
The Age Discrimination in Employment Act;
The Older Worker Benefit Protection Act;
The Fair Labor Standards Act;
The Americans with Disabilities Act;
The Family and Medical Leave Act;
The National Labor Relations Act;
The Fair Credit Reporting Act;
The Immigration Reform Control Act;
Executive Order 11246;
OSHA;
The Equal Pay Act;
The Uniformed Services Employment and Reemployment Rights Act;
The Worker Adjustment and Retraining Notification Act;
The Employee Polygraph Protection Act;
Electronic Communications Privacy Act;
Computer Fraud and Abuse Act;
Health Insurance Portability Act; and
Any state or federal anti-discrimination, consumer protection and/or trade practices act.

The following are also covered by the above-referenced Release: The Florida Civil Rights Act, the Florida Whistleblower Act, the Florida Workers' Compensation Act, and Florida laws, statutory or common law, regarding political activities of employees, lie detectors, jury duty, employment protection, consumer reports, discrimination, privacy rights and/or interests of employees, and any and all state, municipal and local laws and ordinances by the State of Florida.

Additionally, Kirkman hereby unconditionally, fully and finally releases

> and forever discharges Walker from any and all duties, claims, rights, complaints, charges, damages, costs, expenses, attorneys' fees, debts, demands, actions, obligations, and liabilities, of any and every kind, nature, and character whatsoever, whether known or unknown, whether arising out of contract, tort, statute, settlement, equity or otherwise, whether fixed, liquidated, or contingent which Kirkman have, ever had, or may in the future claim to have against Walker based on any act or omission concerning any matter, cause, or thing before the date of this Agreement and up to the time of the execution of this Agreement.

(the "Release") (Doc. 74-1 at 2–4.)

General releases in FLSA cases are frequently viewed as "a 'side deal' in which the employer extracts a gratuitous (although usually valueless) release of all claims in exchange for money unconditionally owed to the employee" and, therefore, such releases "confer[] an uncompensated, unevaluated, and unfair benefit on the employer." *Moreno*, 729 F. Supp. 2d at 1351–52 (footnote omitted). As such, "[a] compromise of an FLSA claim that contains a pervasive release of unknown claims fails judicial scrutiny." *Id.* at 1352.

Nevertheless, courts in this District have approved general releases where a plaintiff received adequate, additional consideration in exchange, even where plaintiffs comprised their FLSA claims. *See Wilburn v. Paradise Lawns & Landscaping, Inc.*, No. 6:14-cv-1557-Orl-37TBS, 2015 WL 13793352, at *1 (M.D. Fla. Feb. 13, 2015), *report and recommendation adopted*, No. 6:14-cv-1557-Orl-37TBS, 2015 WL 13793264 (M.D. Fla. Feb. 19, 2015) (approving FLSA settlement where plaintiff compromised the FLSA claim and received $250 in separate consideration for a general release where it was negotiated separately from plaintiff's FLSA claim); *see also Burch v. TTC Performance Prods., Inc.*, 6:20-cv-537-Orl-40EJK, Doc. 19 at *6–7 (M.D. Fla. Feb. 8,

2021), *report and recommendation adopted*, Doc. 20 (M.D. Fla. Mar. 9, 2021) (approving FLSA settlement where plaintiff received full value for their FLSA claim, plus $100 in separate consideration for a general release, because the general release was negotiated separately from plaintiff's FLSA claim); *Buntin v. Square Foot Management, Co. LLC*, No. 6:14-cv-1394-Orl-37GJK, 2015 WL 3407866, at *2–3 (M.D. Fla. May 27, 2015) (approving FLSA settlement where consideration in the form of a neutral reference was promised by defendant to plaintiff in exchange for a broad general release).

Here, Plaintiff is receiving $250 as consideration for the Release. (Doc. 74-1 at 1.) The parties also contend that the Release was negotiated separately from Plaintiff's FLSA settlement. (Doc. 74 at 7.) Moreover, the parties have certified to the Court that Plaintiff is not aware of any additional claims against Defendants that she is releasing pursuant to the Agreement. (Doc. 70.) This leads me to conclude that the separate consideration is adequate. *See Owens v. SSRMI, LLC*, No. 5:16-cv-15-Oc-PGB-PRL, 2017 WL 2190646, at *3 (M.D. Fla. Apr. 28, 2017), *report and recommendation adopted sub nom. Owens v. SSRM1, LLC*, 2017 WL 2172089 (M.D. Fla. May 17, 2017) (explaining that in order for a court to make an informed determination as to whether a general release affects the fairness and reasonableness of a settlement, an explanation regarding any other claims that a plaintiff is knowingly releasing and identification of any additional consideration given in exchange must be discussed). Therefore, I conclude that the Release does not "undermine the public policies embodied in the FLSA and other labor and employment laws." *Wilburn*, 6:14-cv-1557-Orl-37TBS, Doc. 18 at *6 n.1 (citing *Dees*, 706 F. Supp. 2d at 1242).

## IV.   RECOMMENDATION

Upon consideration of the foregoing, I respectfully recommend that the Court:

1. **GRANT** the parties' Motion (Doc. 74);
2. **FIND** that the parties' Agreement (Doc. 74-1) is a fair and reasonable resolution of a *bona fide* dispute under the FLSA;
3. **DISMISS** the case with prejudice; and
4. **DIRECT** the Clerk of Court to close the file.

### NOTICE TO PARTIES

The party has fourteen days from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Recommended in Orlando, Florida on March 18, 2022.

_____
EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE